[Civ. No. 2380.   Third Appellate District—December 28, 1921.]

## A. J. BOWMAN et al., Respondents, v. H. G. PAYNE, Appellant.

[1] PLEADING — FRAUD — ISSUES — AVERMENTS IN ANSWER TO CROSS-COMPLAINT.—In an action to establish plaintiffs' right to the use of the water of a certain creek, and for the cancellation of a certain instrument affecting that right, the issue of fraud is tendered by the pleadings of plaintiffs where, although the allegations of fraud in the complaint are stricken out on plaintiffs' motion, the same averments are found in the answer to defendant's cross-complaint.

[2] ID.—DEFECTIVE PLEADING—FAILURE TO OBJECT TO EVIDENCE—TRIAL THEORY—WAIVER—FINDINGS.—Where there has been an attempt to set out the essential elements of fraud and the defendant fails to object to the admission of evidence upon that issue on the ground that it is not within the pleadings, the cause being tried upon the theory that the issue of fraud is definite and complete, the defendant will not thereafter be allowed to challenge the sufficiency of the pleading; and the finding in such case is not to be overthrown simply because it is more specific than the allegation of fraud.

[3] WATERS AND WATER RIGHTS—ACTION TO ESTABLISH—FRAUD—EVIDENCE—FINDINGS.—In this action to establish plaintiffs' right to the use of the water of a certain creek, and for the cancellation of a certain instrument affecting that right, the evidence

was sufficient to support the court's findings with reference to the fraud practiced by defendant.

[4] Fraud—Representations of Defendant—Right of Plaintiff to Rely on.—The plaintiff who signed such instrument having been unfamiliar with legal terms and a man of "meager understanding," and not having been represented by counsel, he having had the utmost confidence in the attorney who drew the instrument and represented the defendant in the whole proceeding, said attorney having previously represented him in certain other transactions, it could not be said that his conduct was unreasonable or that he was not justified in relying upon defendant's representations with reference to the effect of such instrument.

[5] Id.—Misapprehension in Mind of Plaintiff—Misrepresentation of Law or Fact—Right to Relief.—Whether the language of the defendant is to be interpreted as a statement that the instrument contained a clause that it did not contain or whether it related to the legal effect of the instrument, thus involving a question of law rather than of fact, the result having been a misapprehension in the mind of plaintiff as to what his legal rights would be, and such misapprehension being known to defendant and caused by his misrepresentation and which he made no effort to rectify, the instrument could be set aside.

APPEAL from a judgment of the Superior Court of Modoc County. Clarence A. Raker, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. S. Baldwin for Appellant.

Oscar Gibbons and A. K. Wylie for Respondents.

BURNETT, J.—The action was brought to obtain a judgment of the court that plaintiffs are the owners of a right to the use of the water of Mill Creek flowing through a certain ditch, which is described in the complaint, for the irrigation of their lands, and that defendant has no right or interest in said water except as to that part which drains and flows off of plaintiffs' said lands into the South Fork of Fitzhugh Creek, and that said defendant and his successors be enjoined from interfering in any manner with the use of said water by plaintiffs, or of impeding or obstructing the flow of the same or any part thereof to and upon the said lands of plaintiffs, and that a certain agreement entered into between plaintiff, A. J. Bowman, and

defendant on the tenth day of June, 1918, be adjudged to be fraudulent and void, and that by the decree of the court the said instrument be canceled and set aside. Certain interrogatories were submitted to a jury and were all answered in favor of plaintiffs. These special findings were adopted by the court and a decree entered in compliance with the prayer of the complaint. The appeal is from the judgment. The main controversy revolves around said instrument of June 10, 1918, which is in form as follows:

"This agreement, made the 10th day of June, A. D. 1918, by and between H. G. Payne of the County of Modoc, State of California, party of the first part, and A. J. Bowman, of the same county and state, party of the second part,

"Witnesseth, that whereas, the party of the first part for many years has claimed and used a water right out of Mill Creek, the point of diversion being about 14 miles to the East of the lands of the party of the first part in said county and state.

"And whereas said party of the first part has and claims the right to run the waters thus diverted from Mill Creek down the channel of Fitzhugh Creek, either through the North Fork or through the South Fork thereof, to the head of the ditch leading from said Fitzhugh Creek to the lands of said party of the first part,

"And whereas the parties hereto have heretofore agreed that if said party of the first part would run said waters down the North Fork of said Fitzhugh Creek, that the party of the second part would look after and keep in repair the ditch by means of which said waters were diverted from said Mill Creek to said Fitzhugh Creek.

"Now therefore it is agreed, that if the said party of the first part shall continue to run the waters of Mill Creek to which he is entitled down the said North Fork of Fitzhugh Creek, the party of the second part shall, after the ditch leading from Mill Creek to Fitzhugh Creek has been opened and put in running condition at the beginning of each irrigating season by the party of the first part, keep said ditch in repair and the waters of the party of the first part running therein during the remainder of each summer season,

"And it is further agreed, that in consideration of the premises, the party of the second part, his heirs and assigns shall and will make no claim whatever to the waters of said

Mill Creek adverse to the claim and use of the party of the first part, nor to the ditch through which said waters are diverted.

"The party of the second part hereby conveys and concedes that the party of the first part is entitled to divert from the waters of Mill Creek for his own use, 117 miners inches of water, measured under a four inch pressure, the same to pass through said ditch and down the channel of the North Fork of Fitzhugh Creek, and past the premises of the party of the second part, freely and without adverse claim or obstruction on the part of the party of the second part, his heirs and assigns.

"Witness the hand and seal of the party of the second part the day and year first above written.

"A. J. BOWMAN."

For the establishment of their claim to the use of the water flowing through said ditch plaintiffs relied principally upon an executed parol agreement with defendant; and as the sufficiency of the evidence to support the finding in that respect is not challenged, we may not notice this feature of the case further than to say that it falls clearly within the principle announced and discussed in *Stepp* v. *Williams*, 52 Cal. App. 237 [198 Pac. 661].

As to said instrument of June 10th the jury found that Bowman did not understand the effect of said document, and that he was induced to sign it by the false representations of Payne. The further specific finding of the court was:

"That at the time of the signing of said instrument said Bowman did not understand the same in this:

"That at said time said Bowman believed that by the terms of said instrument, he the said Bowman, was given therein the right in the future to continue to use all of said Mill Creek waters under the terms of the agreement of 1899 above mentioned; and he further believed at said time, that said instrument did not affect the existing rights of either of plaintiffs, or of either of them in said waters, or any part thereof.

"That at the time of signing of said instrument, and immediately prior thereto, said H. G. Payne informed said Bowman that by the terms of said agreement, no existing

rights of either of plaintiffs in said waters of Mill Creek were affected thereby.

"That said statement made by H. G. Payne as to the contents of said instrument, was made by said Payne for the purpose of inducing and did induce said Bowman to sign said agreement.

"That at the time of making said statement, said Payne knew the same to be false."

It is further specifically found that Bowman believed said representation and relied upon it in the execution of said instrument.

[1] One point made by appellant is that the issue of fraud is not tendered by the pleadings of plaintiffs. It is true that, on motion of respondents, after the evidence was submitted, the allegations of fraud in the complaint were stricken out, but the same averments are found in the answer to appellant's cross-complaint and, hence, the contention is without merit.

[2] It is also claimed that fraud is not sufficiently pleaded. The substantial part of the criticised paragraph is as follows: "That the said A. J. Bowman did not know at the time he signed said agreement, that he was conveying away any of the plaintiffs' rights to said waters of Mill Creek flowing in said ditch, nor did he intend so to do; and that his signature to the said agreement was brought about and wholly caused by the fraudulent misrepresentations of the said defendant as aforesaid, in this, that the said defendant falsely, and fraudulently taking advantage of the fact, that the said plaintiff A. J. Bowman, did not and could not comprehend the meaning of said agreement, falsely and fraudulently represented to the said A. J. Bowman, that said agreement was simply to evidence the rights of said defendant in the waters of Mill Creek, flowing in said ditch, and did not take away from said plaintiffs or either of them any rights they had to the use of the waters of Mill Creek, flowing in said ditch, or affect their rights in any way therein; whereas in truth and in fact, the said agreement upon its face shows that the said plaintiffs by the said act of said A. J. Bowman has disclaimed and renounced all right, to the use of said water, and has burdened himself with the servitude of keeping said ditch in repair

during each and every year without receiving any consideration therefor.''

It may be admitted that this statement of fraud is defective; that it should have been more specifically averred that the representation was false and known by Payne to be false; that it was made to deceive Bowman and to induce him to execute the instrument, and that solely relying upon said representation, and believing it to be true, Bowman executed said instrument; but there was an attempt to set out the essential elements of fraud and the imperfection in form was waived by the failure to object to the evidence upon the ground that it was not within the pleadings. In other words, the cause was tried upon the theory that the issue was as definite and complete as found by the court, and, under such circumstances, the pleading is not thereafter allowed to be challenged. It may be added that the finding is not to be overthrown simply because it is more specific than said allegation of fraud.

[3] The question, though, still remains whether the evidence supports the findings which we have set out, and, if so, does the situation therein revealed constitute fraud that will invalidate the instrument?

As to the sufficiency of the evidence we notice, first, the following testimony of Mr. Bowman: ''Q. Who told you, you were to have the use, if anyone? A. Mr. Payne. Q. What did he say as to the effect it would have, or what did he say about what you could or could not do about this water if you signed this? A. If I signed it I should have the use of the water just the same as I had always had, and if I did not sign it I would be in a law suit. . . . Q. What did he say about that? A. He told me I should have the same use of the water as I had always had. Q. Did you believe him when he said that? A. Yes, sir, I had no reason to disbelieve him.'' The foregoing is sufficient, of course, to show that the false representation was made and that Bowman relied upon it. That Payne knew it to be false follows from the fact that he was familiar with the terms of the instrument, and had consulted with a competent attorney who drew said instrument in accordance with Mr. Payne's direction. Since the trial judge reached the conclusion that Mr. Payne made said representation and knew it to be false, the inference would be irresistible that the representation

was made with the purpose and intention of inducing Bow-
man to execute said instrument. The writing itself indi-
cates, indeed, that some inducement was offered to Bowman
for his signature. As we have seen, he therein engaged
to "keep the ditch in repair and the waters of the party of
the first part flowing therein during the remainder of each
summer season." There would be no reason why he should
do this if he were not to be permitted to use the water. His
land was not riparian to either fork of Fitzhugh Creek and
it would be immaterial to him whether the water should
flow through the North or South Fork to the land of appel-
lant unless respondents should continue to divert the water
from said North Fork.

The attorney who drew the instrument testified that there
was nothing in the instrument which offered any inducement
to Bowman to sign it. As to that the record shows the fol-
lowing: "Q. There was not any provision in this document
that would assist Mr. Bowman under any condition, was
there? A. As I understood it, he had to rely on this per-
mission that was given him by Mr. Payne. Q. Why didn't
you embody that permission in the contract, so that Mr.
Bowman would have something to work on? A. I could
not say why I did not do it. Q. As a matter of fact, that
was the only paragraph which would bind A. J. Bowman
in that instrument, or which would show that he was to get
any consideration for signing that agreement at all, wasn't
it? A. So far as that agreement is concerned, yes, sir.
Q. You knew that paragraph did not really bind Mr. Payne
to do anything? A. Yes, sir, I knew it." It is only fair,
however, to say that the witness, by the use of the term
"permission," did not refer to the use of the water in con-
troversy by respondent, but of additional water that might
be secured by an enlargement of the ditch.

[4] As to the showing of actual fraud, the only possible
ground of debate would seem to be whether Bowman was
justified in relying upon said representation. In this con-
nection it is to be remembered that he was not represented
by counsel and that he had the utmost confidence in the
attorney who drew the instrument and appeared for Payne
in the whole proceeding. It may be added that said attor-
ney had previously represented Bowman in certain transac-
tions and the latter had no reason to doubt that he would

be correctly informed as to the effect of the instrument. Besides, Bowman was unfamiliar with legal terms and was a man of "meager understanding," as found by the court. Under the circumstances, it cannot be said that his conduct was unreasonable in trusting to the representation, and it would be inequitable to permit Payne to take refuge under the plea that Bowman had no legal right to accept as true the false statement that was made. Bowman, indeed, heard the document read by the attorney, but it can be readily understood how this would not be likely to remove the impression created by the oral representation.

[5] The remaining consideration is whether such fraud justified the court in setting aside the instrument. In this connection, it may be a disputed point whether the representation was as to a matter of fact or a question of law. If the language of Payne is to be interpreted as a statement that the instrument contained a clause that it did not contain, then, of course, it related to a matter of fact and falls within the provisions of section 1572 of the Civil Code. But, as seems more probable, if it related to the legal effect of the instrument, it involves a question of law rather than of fact. At any rate, the result was a misapprehension in the mind of Bowman as to what his legal rights would be, such misapprehension being known to Payne and caused by his misrepresentation and which he made no effort to rectify; and, in this view of the case, subdivision 2 of section 1578 of said code may apply.

The decisions are also to the effect that such mistakes furnish sufficient ground for relief. In the early case of *Goodenow* v. *Ewer*, 16 Cal. 461 [76 Am. Dec. 540], it was held that, "a mistake of law, accompanied with special circumstances, such as misrepresentation, undue influence, or misplaced confidence," is a sufficient basis for relief.

As to a misrepresentation in reference to a matter of law, it was said in *Champion* v. *Woods*, 79 Cal. 17 [12 Am. St. Rep. 126, 21 Pac. 534]: "Where one who has had superior means of information possesses a knowledge of the law and thereby obtains an unconscionable advantage of another who is ignorant, and has not been in a situation to become informed, the injured party is entitled to relief, as well as if the matters represented are matters of law." See, also, *Douglass* v. *Todd*, 96 Cal. 655 [31 Am. St. Rep. 247, 31 Pac.

623] ; *Rued* v. *Cooper,* 119 Cal. 463 [51 Pac. 704] ; *Harding*
v. *Robinson,* 175 Cal. 534 [166 Pac. 808].

In the last of these cases is a discussion of the various
kinds of mistake touching a written instrument of which
a party may complain, and of one of these it is said: ''It
may be a mistake entertained by the plaintiff with the
knowledge of the defendant arising under circumstances
which impose the duty upon the defendant to correct the
plaintiff's error. Defendant's failure to do so is itself a
species of fraud and is treated as fraud, and under our
definitions, therefore, falls in the category of fraud and not
of mistake.'' Of course, this case presents a stronger ap-
peal to a court of equity than that situation for the reason
that the mistake herein was caused by the willful and false
representation of appellant.

Under the facts as we must regard them, in view of the
findings of the trial court, it would be a reproach to the
law to hold that said instrument could not be set aside.

Other findings need not be considered, as we deem the
foregoing decisive of the case.

The judgment is affirmed.

Finch, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied
by the supreme court on February 23, 1922.

All the Justices concurred, except Wilbur, J., and
Sloane, J.

Lennon, J., was absent and Richards, J., *pro tem.,* was
acting.