[Civ. No. 6079. First Appellate District, Division Two.—April 4, 1928.]

CITY OF PETALUMA (a Municipal Corporation), Appellant, v. W. J. HICKEY, Respondent.

Fred S. Howell, Hartley F. Peart and Chas. V. Barfield for Appellant.

E. J. Dole for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant to recover a judgment for money. The defendant appeared and answered. The trial was had before the lower court, sitting without a jury. That court made findings of fact in favor of the defendant, and from a judgment entered thereon the plaintiff has appealed and has brought up a bill of exceptions.

The controversy is an outgrowth of a street improvement proceeding. J. E. Cavanagh et al., owned two tracts in the City of Petaluma. The City commenced a proceeding for the opening, extending, and widening of Douglas Street. Thereafter such proceedings were had that both tracts were sold to W. J. Hickey for the nonpayment of the assessment. He paid the total sum of $6,015.02. Later the owners tendered and deposited for plaintiff's account the amount claimed as payable on redemption and at the same time served and filed a protest. Later litigation followed. The result of one proceeding was that the owners obtained a final judgment to the effect that they were mistaken in their contention that the proceeding as a whole was invalid, but that they were correct in contending that they were not liable for $3,337.85, claimed to be due as a penalty. (*Cavanaugh* v. *Shaver*, 56 Cal. App. 758 [207 Pac. 275].) While that litigation was pending, the officers of the plaintiff caused to be paid, and did pay, to W. J. Hickey, this defendant, $10,947, whereas he had paid $6,015.02. In other words, there was paid to W. J. Hickey the total sum tendered under protest by the owners, with interest thereon, instead of the actual amount which the defendant had paid in, together with interest thereon—both payor and payee assuming that the aforesaid penalty, $3,337.85, was a legal charge

against the redemptioners and in favor of the purchaser at the sale. (Pol. Code, sec. 3779 [1889].)

The defendant contends that the plaintiff's complaint does not state a cause of action, and that plaintiff's cause of action in any event is barred by the statute of limitations. On the other hand, the plaintiff contends that its complaint states a cause of action on any one of the following theories. (1) That the money was paid under a mistake of fact; (2) that the money was paid under a mistake of law; (3) that the money was impressed with a trust; and (4) that the money was illegally paid out.

In presenting the first contention the plaintiff cites some of the evidence as showing that there was a mistake of fact. The evidence does not support the contention. A reading of the entire record shows that there was no mistake of fact. Furthermore, the trial court in its findings, among others, found that there was no mistake of fact. The most that can be said in behalf of this theory is that there may be a little conflict in the evidence. This we do not concede, but even though there were a conflict, under well-established rules this court would have no power to interfere with the finding.

Turning to the contention that the plaintiff's complaint pleads a mistake of law, it is perfectly clear that the facts of this case are not such that a court of equity will take jurisdiction and grant a decree. In the case of *Goodenow* v. *Ewer*, 16 Cal. 461, at page 471 [76 Am. Dec. 540], the court said: "Indeed, the weight of authority in the United States is, that the mistake, *unless accompanied with special circumstances, such as misrepresentation, undue influence, or misplaced confidence,* constitutes no ground for relief." (Italics ours.) That decision has been cited and followed. (*Boggs* v. *Fowler & Hargrave,* 16 Cal. 559, 565 [76 Am. Dec. 561]; *Burt* v. *Wilson,* 28 Cal. 632 [87 Am. Dec. 142]; *Kopp* v. *Gunter,* 95 Cal. 63, 74 [30 Pac. 301]; *Brackett* v. *Banegas,* 116 Cal. 278, 284 [58 Am. St. Rep. 164, 48 Pac. 90]; *Rued* v. *Cooper,* 119 Cal. 463, 467 [51 Pac. 704]; *Cooley* v. *County of Calaveras,* 121 Cal. 482, 485 [53 Pac. 1075]; *Wingerter* v. *San Francisco,* 134 Cal. 547 [86 Am. St. Rep. 294, 66 Pac. 730]; *Lewis* v. *San Francisco,* 2 Cal. App. 112, 117 [82 Pac. 1106]; *Bowman* v. *Payne,* 55 Cal. App. 789, 796 [204 Pac. 406].) In the case under

consideration the mistake of law, if any, was not *"accompanied with special circumstances"* such as will confer jurisdiction on a court of equity to grant relief as for a mistake of law. The fact that the money was paid out by one of the officers of the plaintiff, acting under legal advice, does not alter the rights of the plaintiff. The plaintiff contends otherwise and it cites 2 Pomeroy Equity Jurisprudence, section 849. That section is not applicable to the facts of this case. Section 851 is applicable and supports what we have said. *Douglass* v. *Todd,* 96 Cal. 655 [31 Am. St. Rep. 247, 31 Pac. 623], was a motion to be relieved of a default. It contains nothing tending to support the contention of the plaintiff. *Benson* v. *Bunting,* 127 Cal. 532 [78 Am. St. Rep. 81, 59 Pac. 991], involved constructive if not actual fraud, consisting in the plaintiff's attorney entering into a contract purporting to serve the defendant also. *Gregory* v. *Clabrough's Executors,* 129 Cal. 475 [62 Pac. 72], rested on the special circumstances that the plaintiff made a mistake of law by reason of the fact that he was led to consult the defendant's attorney, who gave the incorrect advice. It is patent that not one of these cases supports the points to which the plaintiff cites it.

The contentions that the money was impressed with a trust and that the money was illegally paid out, are so interwoven that they need not be discussed separately. In support of its contention, the plaintiff cites and relies on 21 Ruling Case Law, 174. Turning to the authority cited, it appears that the text purports to be based on several cases, among which is *Lamar Township* v. *City of Lamar,* 261 Mo. 171 [Ann. Cas. 1916D, 740, 169 S. W. 12]. On page 189, the supreme court of Missouri states "Officers are creatures of the law, whose duties are usually fully provided for by statute. In a way they are agents, but they are never general agents, in the sense that they are hampered by neither custom nor law and in the sense that they are absolutely free to follow their own volition. Persons dealing with them do so always with full knowledge of the limitations of their agency and of the laws which, prescribing their duties, hedge them about. They are trustees as to the public money which comes to their hands. The rules which govern this trust are the law pursuant to which the money is paid to them and the law by which they in turn pay it

out. Manifestly, none of the reasons which operate to render recovery of money voluntarily paid under a mistake of law by a private person, applies to an officer. The law which fixes his duties is his power of attorney; if he neglect to follow it, his *cestui que trust* ought not to suffer. In fact, public policy requires that all officers be required to perform their duties within the strict limits of their legal authority.'' (And see *People* v. *Fields,* 58 N. Y. 491, 505.) We have no quarrel with that rule. In this state the rule is statutory so far as one of the counties is concerned. (Pol. Code, sec. 4005b; *Riverside* v. *Yawman & Erbe Mfg. Co.,* 3 Cal. App. 691 [86 Pac. 900].) Section four, article III of Free-holder Charter of the City of Petaluma is not so specific, but it is broad enough to make the same rule applicable to the plaintiff. (*People* v. *Ingersoll,* 58 N. Y. 1, 35 [17 Am. Rep. 178].) The doctrine of the Lamar case was decided in New York in the Tweed cases. (*People* v. *Ingersoll, supra; People* v. *Fields, supra.*) Those cases were commenced by the attorney-general. It was contended that the attorney-general had no authority to maintain the actions. Before the court could decide that contention, it became necessary to ascertain exactly what was the nature of the action which the attorney-general was attempting to maintain. Both opinions are very long. They consider all of the factors in great detail and decide that the moneys involved in those actions were obtained by the defendants unlawfully and through acts of fraud from the city treasury, and that defendants were liable as for moneys had and received. In the case entitled *Board of Supervisors* v. *Ellis,* 59 N. Y. 620, fraud was not involved. Ellis, a supervisor, had put in claims and had been paid by the county treasurer certain moneys as *per diem* and mileage which the statute did not authorize. The court cited and followed the Tweed cases on the rule to which we have cited them. It is clear, therefore, that when the moneys were in the hands of the city treasurer of Petaluma that the treasurer held them as trustee for the municipality. Afterwards when he, without authority of law, paid the moneys to the defendant, an involuntary trust was created. (Civ. Code, sec. 2224.)

Excepting the contention that the action was not commenced in time, we think the complaint pleaded facts showing a cause of action against the defendant on the theory

that he held the moneys as an involuntary trustee. This conclusion brings us to a consideration of the statute of limitations. ■ The defendant pleaded and the trial court found that the action was barred by the provisions of sections 337, 338, 339, 340, and 343 of the Code of Civil Procedure. The undisputed facts are that the money was paid to the defendant on July 6, 1918; and that this action was commenced by the filing of the complaint on the third day of May, 1924, nearly six years thereafter.

■ As we have shown above, the liability of the defendant, if any, was that of an involuntary trustee, but it has been frequently adjudged that an action against an involuntary trustee must be commenced within four years and that the statute applicable is section 343 of the Code of Civil Procedure. (*Nougues* v. *Newlands,* 118 Cal. 102, 106 [50 Pac. 386]; *Broder* v. *Conklin,* 121 Cal. 282, 288 [53 Pac. 699].) The statute of limitations had run.

■ At all times prior to the first day of January, 1919, and during the pendency of the street opening proceeding, C. R. Wingfield, F. H. Snow, and W. J. Hickey were commissioners in the street opening proceeding. C. R. Wingfield and F. H. Snow, as such commissioners, made an order directing the payment of the moneys in suit to W. J. Hickey. From time to time the plaintiff adverts to the official capacity of the defendant. It does not contend that the defendant, as a trustee, dealt with himself and therefore violated a well-established rule of law (*Shakespear* v. *Smith,* 77 Cal. 638 [11 Am. St. Rep. 327, 20 Pac. 294]), therefore, we see no pertinency in the foregoing facts and have not confused the record by constantly adverting thereto. If there was no authority in law to pay the moneys to the defendant, the plaintiff's rights are the same whether defendant was or was not a municipal officer.

We find no error in the record. The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.